J-S38009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL GRAFT JACKSON | : | |
| | : | |
| Appellant | : | No. 3363 EDA 2016 |

Appeal from the Judgment of Sentence October 21, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006149-2015,
MC-51-CR-0042429-2014

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JULY 11, 2017**

Appellant, Daniel Graft Jackson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions of burglary, criminal trespass, and theft by unlawful taking or disposition—movable property.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

IS [APPELLANT] ENTITLED TO AN ARREST OF JUDGMENT

_____

[1] 18 Pa.C.S.A. §§ 3502(a)(1), 3503(a)(1)(ii), and 3921(a), respectively.

_____

*Former Justice specially assigned to the Superior Court.

ON ALL CHARGES WHERE THE EVIDENCE HERE IS INSUFFICIENT TO SUSTAIN THE CHARGE AS THE EVIDENCE DOES NOT ESTABLISH THAT [APPELLANT] WAS THE BURGLAR IN QUESTION?

IS [APPELLANT] ENTITLED TO A NEW TRIAL WHERE THE GREATER WEIGHT OF THE EVIDENCE DOES NOT ESTABLISH THAT [APPELLANT] WAS THE PERPETRATOR OF THIS BURGLARY AND THE VERDICT IS BASED ON NOTHING MORE THAN SPECULATION, CONJECTURE AND SURMISE?

IS [APPELLANT] ENTITLED TO A NEW TRIAL AS THE RESULT OF COURT ERROR WHERE THE COURT PERMITTED THE JURY TO SEE AN ALTERED[,] DOCTORED VERSION OF A VIDEOTAPE THAT HAD BEEN INTRODUCED IN PART, BUT NOT IN FULL DURING THE COURSE OF THE TRIAL AND WHERE THE JURY SAW THE ALTERED VERSION FOR THE FIRST TIME DURING THE MIDST OF JURY DELIBERATIONS?

IS [APPELLANT] ENTITLED TO A NEW TRIAL AS THE RESULT OF COURT ERROR WHERE THE COURT OVER OBJECTION PERMITTED HEARSAY INTO THE TRIAL AND WHERE SAID HEARSAY WAS UNFAIRLY PREJUDICIAL TO [APPELLANT]?

(Appellant's Brief at 3).[2]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Barbara A. McDermott, we conclude Appellant's issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of those questions. (**See** Trial Court Opinion, filed December 12, 2016, at 4-12)

_____

[2] Notwithstanding how he phrases it, Appellant's fourth issue on appeal actually challenges the trial court's alleged admonishment of trial counsel during the cross-examination of Officer Ingram at trial.

(finding: **(1)** Ms. Martindale testified she told Appellant where Victim kept money and directed Appellant to Victim's house during early morning hours of 12/12/14; Ms. Martindale also stated she saw Appellant pry open Victim's front door without permission; Victim's house was adapted for overnight accommodations, and Victim was asleep inside at time of offense; Appellant proceeded to steal Victim's pants, which contained approximately $3,000.00; surveillance video captured Appellant limping from Victim's house with pants in hand around 4:00 a.m.; additional surveillance video from around 8 a.m. revealed Appellant wearing same clothes and walking with limp; Appellant conceded he was at Victim's house around 8:00 a.m. on day of incident; thus, there was sufficient evidence for jury to convict Appellant of burglary, criminal trespass, and theft by unlawful taking or disposition; **(2)** Appellant waived challenge to weight of evidence for failure to raise claim in trial court; nevertheless, even if Appellant had properly preserved claim, it would warrant no relief; Commonwealth presented ample video evidence, which showed Appellant approach Victim's house and exit Victim's house with Victim's pants; Victim and Officer Muscarnero testified that Victim's pants contained large sum of money; Ms. Martindale testified she told Appellant where Victim kept money and observed Appellant break into Victim's home; Victim testified Appellant returned to Victim's house around 8:00 a.m. and attempted to steal more money; Victim also stated Appellant left his photo ID in Victim's living room after brief struggle; this

evidence is not vague or uncertain; thus, Appellant's verdict does not shock court's conscience; **(3)** during trial, Commonwealth displayed surveillance video via projection screen; before Commonwealth rested, parties discussed brightness and sharpness of video on projection screen and determined jury should view video on laptop screen; Commonwealth subsequently displayed video to jury on laptop screen; upon jury's request to view video during jury deliberations, Appellant objected to Commonwealth's brightening of video on projection screen; after discussion, court determined jury should again view surveillance video on laptop screen; under these circumstances, court sustained Appellant's objection to use of brightened video; thus, Appellant has failed to demonstrate prejudice, and Appellant's claim lacks merit; **(4)** during cross-examination, defense counsel punctuated many of Officer Ingram's answers with personal commentary, which indicated defense counsel's approval of Officer Ingram answers; court told counsel he could ask questions but could not make comments after Officer Ingram's answers; despite court's instruction, counsel continued to provide personal commentary after Officer Ingram's responses; as result, court informed counsel he was talking to himself out loud; court made statements to counsel in effort to exercise reasonable control over proceedings and to prevent waste of time; importantly, court phrased statements in way that made light of counsel's tendency to provide personal commentary; because court made statements to preserve order and decorum in courtroom,

Appellant's claim has no merit). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2017

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

**FILED**

DEC 1 2 2016



Criminal Appeals Uni
First Judicial District of |

COMMONWEALTH OF PENNSYLVANIA  :  CP-51-CR-0006149-2015

:

:

v. :

:

:

DANIEL GRAFT JACKSON  :

:

:

CP-51-CR-0006149-2015 Comm. v. Jackson, Daniel Graft
Opinion

7875590271

## OPINION

**McDermott, J.**                                                                           **December 12, 2016**

### Procedural History

On December 18, 2014, the Defendant, Daniel Graft Jackson, was arrested and charged with Burglary and related offenses. On August 17, 2016, the Defendant appeared before this Court and elected to be tried by a jury. On August 18, 2016, the jury convicted the Defendant of Burglary, Criminal Trespass, and Theft by Unlawful Taking.[1]

This Court deferred sentencing for review of the Defendant's pre-sentence and mental health reports. On October 21, 2016, this Court sentenced the Defendant to ten to twenty years imprisonment for Burglary and a concurrent sentence of two to four years for Theft by Unlawful Taking.[2] The Defendant did not file a post-sentence motion.

On October 24, 2016, the Defendant filed a timely Notice of Appeal. On November 1, 2016, this Court ordered the Defendant to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On November 18, 2016, this Court granted the

---

[1] The jury found the Defendant not guilty of Simple Assault. The remaining Receiving Stolen Property charge was *nolle prossed.*

[2] The Defendant's robbery conviction constituted a second strike carrying a mandatory ten to twenty year minimum sentence. The Criminal Trespass charge merged with Burglary for the purpose of sentencing.

Defendant's Motion for Extension of Time. On November 30, 2016, the Defendant filed a timely 1925(b) Statement.

**Facts**

In the early morning hours of December 12, 2014, Diana Martindale stayed at her friend's home at 431 Durfor Street after arguing with her boyfriend at her home at the intersection of 6th and Morris Streets. At approximately 4:00 a.m., Martindale began to return home and walked to the bus stop on 7th Street, where she encountered the Defendant, Daniel Graft Jackson. There, the Defendant told her that he was trying to get some money, whereupon Martindale suggested that he try Frank Cavallaro's home nearby at 709 Jackson Street. Martindale often performed chores and sexual favors for Cavallaro, who was eighty-eight years old at the time, in exchange for payment. Martindale told the Defendant that Cavallaro kept his money in his front pants-pocket, and then watched as the Defendant approached Cavallaro's house and attempted to break in with a hammer. N.T. 8/18/2016 at 161–167.

Cavallaro, who was asleep on his downstairs living room couch, awoke to the sounds of someone kicking in his door. The assailant, whom Cavallaro later identified as the Defendant, snatched Cavallaro's pants, containing his wallet, car keys, and approximately $3,000, and escaped out the door. As the Defendant absconded from 709 Jackson Street with Cavallaro's pants in hand, cameras at the nearby Star Point Salon and R & A Jewelers recorded his escape. *Id.* at 54–57, 77–84, 102–112.

Cavallaro called the police and Officer Philip Muscarnero responded to the scene and observed a kicked in front door and a broken door jam. Officer Muscarnero repaired the door and disabled Cavallaro's car before leaving. *Id.* at 81–84.

2

At approximately 8:00 a.m. later that morning, the Defendant returned to Cavallaro's home and told Cavallaro that he knew who stole Cavallaro's money and demanded money to ensure its safe return. From inside his living room, Cavallaro grabbed a wrench, concealed it in his pocket, and pointed it at the Defendant as though it was a gun. Undeterred, the Defendant initiated a fistfight with Cavallaro and inadvertently dropped his identification card on the living room floor before escaping through the front door. *Id.* at 58–64.

Officer Tanya Ingram, responding to Cavallaro's 911 call, arrived outside 709 Jackson Street and observed the Defendant standing outside Cavallaro's house, wearing a black-hooded sweatshirt. Officer Ingram asked the Defendant if he called 911 and he responded in the negative. At 709 Jackson Street, Cavallaro told Officer Ingram that the Defendant attempted to rob him earlier. The Defendant then approached Officer Ingram and told her that Cavallaro invited him inside the home and took his ID card, which he wanted back. Officer Ingram let both parties go and filed a report. *Id.* at 89–94.

After Officer Ingram left, Cavallaro called an aide over to his home, who discovered the Defendant's ID card in the living room, and a neighbor discovered Cavallaro's ID cards in the street in front of the home, which Cavallaro gave to the police. Upon receipt of the ID card, Detective Michael Ferry obtained video recordings from the Star Point Salon and R & A Jewelers and observed the Defendant, wearing a black-hooded sweatshirt, speak to Martindale before the burglary, walk up the front stairs to Cavallaro's home, walk down the stairs shortly thereafter, and limp-run down South 7th Street, carrying Cavallaro's pants. *Id.* at 62–65, 102–128.

**Discussion**

The Defendant seeks a new trial based on six claims and argues that this Court erred by: (1) failing to suppress improperly disclosed video evidence; (2) permitting Detective Ferry to offer conclusions concerning the Commonwealth's video surveillance evidence; (3) reprimanding trial counsel in open court for "talking to himself;" and (4) preventing counsel from articulating his objection to new evidence. The Defendant further claims that that: (5) the evidence was insufficient to sustain his convictions; and, (6) the verdict was against the weight of the evidence.

The Defendant argues that this Court erred by failing to suppress evidence of a security video that showed the Defendant walk up and down the stairs leading to Cavallaro's front door. The standard of review governing the admission of evidence is well settled. The trial court must balance the probative value of all evidence against the danger of unfair prejudice. *Commonwealth v. Chamberlain*, 30 A.3d 381, 419 (Pa. 2011) (*citing Commonwealth v. Flor*, 998 A.2d 606, 623 (Pa. 2010)); *Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007)).

The admissibility of evidence rests within the sound discretion of the trial court and may only be reversed upon showing that the trial court clearly abused its discretion. *Commonwealth v. Koch*, 106 A.3d 705, 710 (Pa. 2014). An appellate court will not find an abuse of discretion merely because it may reach a different conclusion, but instead requires a result of manifest unreasonableness, partiality, prejudice, bias, ill-will, or such lack of support so as to be clearly erroneous. *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015) (*citing Commonwealth v. Davido*, 106 A.3d 611, 645 (Pa. 2014)).

"Due process is offended when the prosecution withholds material evidence favorable to the accused." *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (*citing Brady v. Maryland*,

373 U.S. 83, 87 (1963)). To be entitled to a new trial based on the Commonwealth's failure to disclose evidence, a defendant must show that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. *Commonwealth v. Spotz*, 47 A.3d 63, 84 (Pa. 2012). No discovery violation occurs where the parties had equal access to the information or if the Defendant knew or could have uncovered that evidence with reasonable diligence. *Weiss*, 81 A.3d at 783 (*citing Commonwealth v. Spotz*, 896 A.2d 1191, 1248 (Pa. 2006)).

The Defendant is not entitled to relief. Immediately before the trial was scheduled to begin, trial counsel accused the prosecutor of withholding video surveillance evidence showing the Defendant walking up to Cavallaro's home immediately prior to the burglary. N.T. 8/18/2016 at 5–6. On the day of jury selection, this Court provided the Defendant and trial counsel the opportunity to view the surveillance videos, where they observed the Defendant leave Cavallaro's home, carrying his pants. *Id.* at 15. On the day of trial, a police officer informed the prosecutor that if she watched the video starting four seconds prior to the part showing the Defendant's escape, she would see the Defendant climb the stairs to Cavallaro's home. *Id.* at 5. The prosecutor informed trial counsel, and he objected on the basis that the Commonwealth withheld evidence. Trial counsel further informed this Court that the Commonwealth failed to pass the tapes in discovery. *Id.* at 7, 12.

The Commonwealth did not withhold video evidence from the Defendant. Not only did the Defendant have the opportunity to view the surveillance tapes the day before trial, both the Defendant and his counsel watched the videos during the preliminary hearing. *Id.* at 6–10, 15. The Commonwealth passed discovery of the tapes to both trial counsel and Martindale's attorney

5

prior to trial, and the prosecutor confirmed that Martindale's attorney received them. *Id.* at 11–13. Trial counsel was unable to provide specifics as to when he requested the tapes or why he failed to request a continuance. Assuming that trial counsel never received the tapes, he was still on notice of their existence and could have exercised reasonable diligence in securing the surveillance tapes from either the Commonwealth or Martindale's attorney, but he failed to do so. *See Commonwealth v. Sattazahn*, 952 A.2d 640, 664 (Pa. 2008) (explaining that reliance on the prosecutor's file does not substitute for an independent investigation). As such, no discovery violation occurred. Since the evidence is otherwise highly probative and the Defendant did not allege that the videos themselves are unduly prejudicial, this Court had no basis to deny its admission.

The Defendant argues that this Court erred by overruling his objections to "clear and present hearsay and righteous objections to the witness' unfounded conclusions," referring to Officer Ferry's testimony concerning his investigation of the surveillance tapes. "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701.

At trial, the Defendant objected to Detective Ferry's testimony that, based on the clothing worn by the individual shown in the daytime and nighttime surveillance videos, they appeared to be the same person. N.T. 8/18/2016 at 105. This Court instructed the jury that Detective Ferry could not determine the facts, that his testimony was only admissible to explain his course of conduct, and that their own observations controlled:

> **[THE COURT:]** Members of the jury, the detective can't . . .
> determine the facts. So what he can just tell you is based upon what

6

> he observed. So he can say maybe similar clothing, et cetera, et cetera. It's not being offered for the truth of the matter but for what he then did. And, counsel, the jury is going to see the video?
> **[THE PROSECUTOR:]** Yes.
> **THE COURT:** So you'll make that decision yourself as to what the video shows or doesn't show.

*Id.* at 105–106. After this instruction, Detective Ferry testified that an individual in each video walked with a limp and wore a similar heavy sweatshirt. *Id.* at 107. Ferry further testified that the conclusions he drew from the video led him to arrest the Defendant. *Id.* at 109. This testimony was rationally based on Detective Ferry's own knowledge that the Defendant walked with a limp and wore a black sweatshirt at Cavallaro's house the morning after the burglary. This testimony assisted the jury in understanding why Detective Ferry investigated the Defendant as opposed to other possible suspects. This Court acted within its discretion in permitting Detective Ferry's testimony.

The Defendant contends that he was denied a fair trial because this Court admonished trial counsel for "talking to himself" during his cross-examination of Commonwealth witnesses. A trial court may direct comments to counsel so it can reasonably exercise judicial control of the proceedings and ensure an orderly proceeding. *Commonwealth v. Collins*, 70 A.3d 1245, 1255 (Pa. Super. 2013) (*citing Commonwealth v. Jones*, 683 A.2d 1181, 1191–1192 (Pa. 1996)); Pa.R.E. 611(a). Furthermore, "a defendant is not entitled to a new trial because of the trial court's chastisement of his trial counsel, unless that criticism reflects animosity towards or disbelief of the defendant or partiality favoring the Commonwealth." *Commonwealth v. Correa*, 620 A.2d 497, 505 (Pa. Super. 1993).

The Defendant is not entitled to relief. During his cross examination of Officer Ingram, trial counsel punctuated many of the witness' answers with personal commentary indicating to the jury that she answered his question the way he wanted. N.T. 8/18/2016 at 97–99. This Court

7

told counsel that, although he was entitled to ask questions, he was not permitted to make comments after witnesses gave answers. *Id.* at 99–100. Again, throughout his cross and recross-examination of Detective Ferry, trial counsel commented on the witness' responses at least nine times. *Id.* at 134, 136–138, 143, 151, 155–157. After the prosecutor objected, this Court simply informed counsel that he was talking to himself out loud. *Id.* at 157.

In an attempt to make its point without appearing to chastise trial counsel, this Court directed its comments to trial counsel to exercise reasonable control over the proceedings and to prevent counsel from wasting time. *See* Pa.R.E. 611(a). Trial counsel's comments were not presented in the form of a question and served no cognizable purpose in a court of law. Accordingly, this Court's warnings to counsel made light of counsel's nervous tendency in an efficient manner that preserved order and decorum in the courtroom. The Defendant's claim is without merit.

The Defendant argues that this Court erred by preventing trial counsel to fully articulate his objection to the "new" evidence the Commonwealth presented by adjusting the brightness and sharpness of the projector screen used to display the surveillance videos. This claim has no merit, because this Court, in effect, sustained the Defendant's objection.

During trial, the Commonwealth displayed the surveillance videos via a projection screen. Before the Commonwealth rested, there was a question concerning whether the brightness and sharpness levels matched the true levels as displayed on a laptop screen. N.T. 8/18/2016 at 201. Although the Commonwealth attempted to adjust the levels on the projector, this Court determined that the proper course of action was to permit the jury to view the surveillance videos directly from the laptop screen, which the jury did. *Id.* at 202–205.

8

After trial counsel returned to Court in anticipation of the jury's request to view the surveillance video again, he observed the prosecutor adjust the sharpness and the brightness of the projector and lodged an objection, characterizing the prosecutor's setting adjustment as a manipulation constituting new evidence. *Id.* at 277–278. After hearing trial counsel's argument, this Court viewed the video via projection screen and determined that the jury should again view the videos directly via laptop, which they again did. *Id.* at 285–290. The Defendant fails to demonstrate prejudice, and his claim is therefore without merit.

The Defendant argues that the evidence is insufficient to sustain the convictions for burglary, criminal trespass, and theft. Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences drawn therefrom support the jury's finding of all the elements of an offense beyond a reasonable doubt. *Commonwealth v. Mattison*, 82 A.3d 386, 392 (Pa. 2013) (*citing Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008)). In applying this standard, Pennsylvania courts acknowledge that "the Commonwealth may sustain its burden by means of wholly circumstantial evidence." *Montalvo*, 956 A.2d at 932 (*citing Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008)). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, as any doubts regarding a defendant's guilt may be resolved by the fact finder unless the evidence is so inconclusive that, as a matter of law, no probability of guilt may be drawn. *Commonwealth v. Devine*, 26 A.3d 1139, 1145 (Pa. Super. 2011) (*quoting Commonwealth v. Jones*, 874 A.2d 108, 120–121 (Pa. Super. 2005)). The fact finder is free to believe all, part, or none of the evidence. *Id.*

A person commits the offense of burglary if, with the intent to commit a crime therein, he enters a building or occupied structure, or separately secured or occupied portion thereof that is

adapted for overnight accommodations in which at the time of the offense any person is present. 18 Pa.C.S. § 3502(a)(1). A person commits criminal trespass if, knowing that he is not licensed or privileged to do so, he breaks into any building or occupied structure or separately secured or occupied portion thereof. 18 Pa.C.S. § 3503(a)(1)(ii). A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with the intent to deprive him thereof. 18 Pa.C.S. § 3921(a).

The evidence is sufficient to sustain each of the Defendant's convictions. Martindale testified that on December 12, 2014, she told the Defendant that Cavallaro kept a sum of money in his pants and directed him to Cavallaro's house at 709 Jackson Street. N.T. 8/18/2016 at 166. Moments later, Martindale observed the Defendant begin to pry open Cavallaro's front door with a hammer. *Id.* at 167. The Defendant did not have permission to enter Cavallaro's home. Inside the home, which was adapted for overnight accommodation and where Cavallaro was present, the Defendant stole Cavallaro's pants, which contained approximately $3,000 within its pockets. *Id.* at 56, 83. Security cameras captured the Defendant limping from Cavallaro's home, pants in hand. *Id.* at 104 –105, 115–128; Commonwealth Exhibit C-8B; Commonwealth Exhibit C-8C. Additional security footage from the morning after the burglary showed the Defendant wearing the same clothing and walking with the same limp. N.T. 8/18/2016 at 129; Commonwealth Exhibit C-8D. The Defendant conceded that he was at Cavallaro's house that morning. N.T. 223–225. This evidence is more than sufficient to permit a jury to conclude that the Defendant burglarized Cavallaro's home and stole his pants, containing $3,000.

The Defendant also argues that the verdict was against the weight of the evidence. "A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written

10

motion at any time before sentencing; or (3) in a post sentence motion." Pa.R.Crim.P. 607(a). The Defendant did not raise a weight of the evidence claim before this Court. Therefore, the claim is waived. *See Commonwealth v. Ford*, 141 A.3d 547, 557 (Pa. Super. 2016) (*citing Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012)).

For the benefit of future proceedings, this Court shall address the Defendant's waived claim. For weight of the evidence claims, the Supreme Court has explained that the test is whether the verdict must be so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*citing Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015)). Since the finder of fact is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, for a defendant to prevail on a challenge of the weight, the evidence must be "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Thompson*, 106 A.3d 742, 759 (Pa. Super. 2014) (*citing Commonwealth v. Ross*, 856 A.2d 93, 99 (Pa. Super. 2004)). An appellate court cannot substitute its judgment for that of the finder of fact. *Commonwealth v. Ovalles*, 144 A.3d 957, 968–969 (Pa. Super. 2016) (*citing Commonwealth v. Slocum*, 86 A.3d 272, 275–276 (Pa. Super. 2014)). A weight of the evidence challenge is one of the least assailable reasons for granting or denying a trial. *Commonwealth v. Horne*, 89 A.3d 277, 285 (Pa. Super. 2014) (*citing Widmer*, 744 A.2d at 753).

An argument that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. *Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (*citing Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009)). An allegation that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court.

11

*Commonwealth v. Stokes*, 78 A.3d 644, 650 (Pa. Super. 2013) (citing *Commonwealth v. Widmer*, 744 A.2d 745, 751–752 (Pa. 2000). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror." *Commonwealth v. Mucci*, 143 A.3d 399, 410 (Pa. Super. 2016) (*citing Commonwealth v. Clay* 64 A.3d 1049, 1054–1055 (Pa. 2013)).

Had it not been waived, the Defendant's weight of the evidence claim would fail. The Commonwealth presented ample video evidence showing the Defendant approach Cavallaro's house and exit the house with the victim's pants. Cavallaro and Officer Muscarnero testified that the pants contained a large sum of money, up to $3,000. 8/18/2016 at 58, 83. Martindale testified that she informed the Defendant that Cavallaro kept money in his pants and immediately thereafter observed him begin to break into Cavallaro's home, corroborating the Commonwealth's surveillance videos. *Id.* at 162–163, 166–167. Cavallaro further testified that the Defendant returned to his home, attempted to steal more money from him, and after a struggle left his ID card in the living room. *Id.* at 59, 61, 63–64. This evidence is neither vague, tenuous, nor uncertain, and the jury's verdict does not shock this Court's conscience.

For the foregoing reasons, the decision of this Court should be affirmed.

BY THE COURT,

_____
Barbara A. McDermott, J.

12

**Commonwealth v. Daniel Graft Jackson, CP-51-CR-0006149-2015**

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Hugh Burns, Esquire

**Type of Service:**      **DA's Courthouse Assigned Box**

William J. Ciancaglini, Esq.
1518 Walnut Street
Suite 1400
Philadelphia, PA 19102

**Type of Service:**      **First Class Mail**

Daniel Graft Jackson
MS 5540
SCI Camp Hill
Box 200
Camp Hill, PA 17001

**Type of Service:**      **Certified Mail**

**Dated: December 12, 2016**

**Joseph Duffy**
**Law Clerk to the**
**Honorable Barbara A. McDermott**